IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

AIKEN DIVISION

| | |
|---|---|
| RONALD A. ALASIN, EIJI TERAGOUCHI, GORDON G. PENNINGTON, and for themselves and others similarly situated, | ) ) ) ) ) ) |
| Plaintiffs, | ) |
| v. | ) ) |
| WESTINGHOUSE SAVANNAH RIVER COMPANY AND WSRC DELTA PLAN, | ) ) ) ) ) |
| Defendants. | ) ) |

Civil Action No. 1:05-1045-HFF-BM

**REPORT AND RECOMMENDATION**

This action was originally filed by the Plaintiffs in the United States District Court for the Western District of Pennsylvania. Plaintiffs are all former employees of the Defendant WSRC, a subsidiary of Westinghouse Electric Corporation (WEC). Plaintiffs also at one time worked for WEC, and have filed this action alleging that they are entitled to pension benefits at a level they would have received had they continued to work for WEC. The difference between these two pensions is called the "delta". Plaintiffs allege that these so-called "delta benefits" have never been funded in violation of the Employment Retirement Income Savings Act (ERISA), 29 U.S.C. § 1001, et. seq., among other claims.

1



By order filed April 6, 2005, this case was transferred to the District of South Carolina, and on February 6, 2006, Plaintiffs filed a supplemental motion to certify a class[1], seeking to add approximately one hundred and fifteen (115) former WSRC employees as the putative "class" for this case. See Motion (Court Docket No. 14, at p. 11). Defendants filed a reply memorandum on June 29, 2006. However, on September 14, 2006, the motion to certify class was withdrawn, without prejudice and with leave to re-file.

A second motion to certify class was thereafter filed on September 29, 2006, and on October 2, 2006 that motion was referred to the undersigned for disposition. However, Plaintiffs' second motion to certify class was subsequently withdrawn on December 12, 2006. After additional discovery, a third motion to certify class was filed by the Plaintiffs on February 20, 2007, and on February 23, 2007, that motion was referred to the undersigned for disposition. Defendants filed a memorandum in opposition to this motion on March 12, 2007, with additional filings on March 23, 2007. A hearing on Plaintiffs' motion was held on May 22, 2007, at which the Court was advised that the parties might be able to resolve this case through mediation. This resulted in an order being entered establishing a deadline for the parties to notify the Court concerning the scheduling and results of mediation.

However, subsequent to these events Defendants' lead counsel suddenly and unexpectedly passed away. As it was necessary for new counsel to become familiar with this case, an order was entered on August 28, 2007 removing the pending motions from the docket until mediation could be scheduled and completed. Mediation was thereafter held on October 16-17, 2007,

---

[1] Plaintiffs had previously moved for class certification on July 22, 2004, when the case was pending in the Western District of Pennsylvania.

2



and the Court was advised in a conference call on November 20, 2007 that the mediation had been unsuccessful. As a result, the parties were notified by the Court that the motion to certify a class would be restored to the docket, with further scheduling in the case to be established through an amended scheduling order. A supplemental response in opposition to the motion to certify class was thereafter filed by the Defendants on December 14, 2007, following which Plaintiffs filed a reply memorandum on January 4, 2008.

Plaintiffs' motion to certify class is now before the Court for disposition. A Report and Recommendation is required on this motion pursuant to 28 U.S.C. § 636(b)(1).

## **Discussion**

Plaintiffs allege in their Complaint that during 1989 and up until June 1991, WEC encouraged Plaintiffs as well as other WEC employees to transfer to its wholly owned subsidiary, WSRC, and that they were promised that, if they transferred, they would receive pension benefits at least equal to those provided at WEC. Plaintiffs further allege, however, that it was subsequently disclosed that WSRC pensions would be less than the pensions Plaintiffs and other transferred employees would have received had they remained at WEC, the difference or shortfall between the two pensions being called the pension "delta". Plaintiffs allege that they were assured that the problem would be corrected so that Plaintiffs and others who transferred would receive the same pensions they would have received had they continued to work directly for WEC; in other words, to pay the "delta". However, Plaintiffs allege that now, when they are entitled to their delta plan benefits, WSRC takes the position that the benefit was conditioned on the employee's working continuously with WSRC and actually retiring directly from WSRC and taking their combined WEC, WSRC, and delta pensions at the time of such direct retirement. Plaintiffs refer to this condition as

3



the "phantom" condition, and argue that it was never part of the delta plan.

Plaintiff Alasin worked for WEC starting in September 1981 and was transferred to WSRC in April 1989. He was later transferred back to WEC in April 1997. When Alasin became eligible for retirement benefits in May 2004, WSRC denied his request that he be awarded benefits from the delta plan.

Plaintiff Pennington began working for WEC in 1970 and was transferred to WSRC in 1989. He left WSRC in 1993, rolling his WEC pension into an IRA while deferring his WSRC pension. Pennington began receiving retirement benefits from WSRC in 2003, but was denied any benefits from the delta plan.

Plaintiff Teragouchi began working for WEC in January 1969 and was transferred to WSRC in June 1990. In 1996 he transferred from WSRC to a WEC facility in Alabama, from which he retired in 2000. WSRC has denied his request for benefits from the delta plan.

Plaintiffs seek to represent a class consisting of three overlapping subclasses, as follows:

> (a) Subclass One: all persons who were transferred from WEC to WSRC before June 1991, and who subsequently became or will become eligible for retirement benefits, and as to whom WSRC has taken the position that it will not pay benefits from the Delta Plan even though these persons meet the eligibility requirements for the Delta benefits – where WSRC's position is that the benefit was conditioned on the person's working continuously with WSRC and actually retiring directly from WSRC and taking his combined WEC, WSRC, and Delta pensions at the time of such direct retirement.
>
> (b) Subclass Two: all persons who were transferred from WEC to WSRC before June 1991, and who subsequently became or will become eligible for Delta benefits, and as to whom WSRC has applied (or intends to apply) improper offsets (such as a deduction for retiree health benefits that the participant never actually receives).
>
> (c) Subclass Three: All participants in the Delta Plan, as all participants' rights are being violated as set forth in Count II of the Complaint, since Defendants are

4



violating funding, reporting and disclosure, fiduciary, and claims procedure rules.[2]

**I.**

Rule 23(a), Fed.R.Civ.P., provides that one or more members of a class may sue or be sued as representative parties on behalf of all only if "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."  Further, to be certified, a proposed class must satisfy not only Rule 23(a), but also one of the three sub-parts of Rule 23(b); Gunnells v. Healthplan Servs., Inc., 348 F.3d 417, 423 (4th Cir. 2003); as follows: 1) individual actions would risk inconsistent adjudications/adjudications dispositive of non-parties; or 2) class-wide injunctive/declaratory relief is sought and appropriate; or 3) legal/factual questions, common to the proposed class members, predominate over questions affecting individual members.

It is the Plaintiffs who carry the burden of establishing that each of the requirements for a class action are satisfied.  In re A.H. Robbins Co., 880 F.2d 709, 728 (4th Cir. 1989), cert. denied, 493 U.S. 959 (1989); abrogated on other grounds by, Amchem Prods., Inc. v. Windsor, 521 U.S. 591 (1997); Windham v. Am. Brands, Inc., 565 F.2d 59, 65, n. 6 (4th Cir. 1977) (en banc) ["It is well settled in this jurisdiction that the proponent of a class certification has the burden of establishing the right to such certification under Rule 23"]; Gariety v. Grant Thornton, LLP, 368 F.3d

---

[2]These proposed subclasses are different from the original class proposed by the Plaintiffs, and are set forth in a proposed amended Complaint, at ¶ 40(a)-(c). That amended Complaint also seeks to add an additional named Plaintiff, Vinson Lamb. A ruling on Plaintiffs' motion to amend, which Defendants oppose, has been held in abeyance pending consideration of Plaintiffs' class certification motion and other issues. For purposes of consideration of Plaintiffs' class certification motion, however, the undersigned has discussed Plaintiffs' entire request for certification.



356, 362 (4th Cir. 2004) ["The plaintiffs who propose to represent the class bear the burden of demonstrating that the requirements of Rule 23 are satisfied"]; Lienhart v. Dryvit Systems, Inc., 255 F.3d 138, 146 (4th Cir. 2001) ["The party seeking class certification bears the burden of proof"]. Even so, class actions save resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion, and therefore Rule 23 should generally be liberally construed. Eisenberg v. Gagnon, 766 F.2d 770, 785 (3d Cir. 1985), cert. denied, 474 U.S. 946 (1985); Walsh v. Pittsburgh Press Co., 160 F.R.D. 527, 529 (W.D.Pa. 1994); Gulf Oil Co. v. Bernard, 452 U.S. 89, 99 (1981); General Telephone Co. of the Southwest v. Falcon, 457 U.S. 147, 155 (1982).

**II.**

After careful consideration of the arguments of the parties in conjunction with the applicable caselaw, the undersigned has determined that it would not be appropriate to certify a class in this case at this time. In order to determine whether any individual employee is entitled to the "delta" benefits at issue in this case, it will be necessary to examine and determine numerous personal variables for each employee, including such issues as the number of years of service at WEC, the number of years of service at WSRC, whether the employee meets the pension shortfall requirement of $25.00 per month or more to qualify for delta benefits, whether an employee's claim is barred by the applicable statute of limitations, as well as other individualized inquiries about each employee's employment history. Indeed, the three Plaintiffs themselves present different factual and employment histories which may result in some being found eligible for delta benefits while other(s) are not.

The need for such individualized inquiries to establish whether an employee would

6



even be considered a member of Plaintiffs' purported class defeats Rule 23's commonality and typicality requirements.  Thorn v. Jefferson-Pilot Life Ins.Co., 445 F.3d 311, 319-321, 327-328 (4th Cir. 2006) [upholding denial of class certification where individual's claims could not be resolved on a class-wide basis and where maintenance of a class would have presented substantial manageability problems]; Broussard v. Meineke Disc. Muffler Shops, 155 F.3d 331, 342 (4th Cir. 1998) [need for individualized proof of entry bars class certification for failure to satisfy the commonality and typicality requirements]; Boley v. Brown, 10 F.3d 218, 223 (4th Cir. 1993) [class certification properly denied where any resultant harm was dependent upon consideration of unique circumstances pertinent to each class member]; Kidwell v. Transportation Communications International Union, 946 F.2d 283, 305 (4th Cir. 1991); Windham v. American Brands, Inc., 565 F.2d 59, 68 (4th Cir. 1977) ["[W]here the issue of damages and impact does not lend itself to...a mechanical calculation, but requires separate mini-trials of...individual claims...the case [is] unmanageable as a class action"]; see also Klotz v. Trans Union, LLC,  246 F.R.D. 208, 217 (E.D.Pa. 2007) ["The potential efficiencies of a class action are not realized where an individual assessment of each putative class member's claims must be made"]; 2Alba Conte & Herbert Newberg, Newberg on Class Actions, § 4:32(4th ed. 2002) ["[W]hen a court determines that a multitude of mini-trials will be necessary to dispose of individual claims, the court will likely find that common questions do not predominate, and the need for numerous mini-trials renders the class action unmanageable and not superior"].  Therefore, Plaintiffs are not entitled to class certification at this time.

### III.

In making this finding, the undersigned has considered that, at least with respect to Plaintiffs' proposed Subclass One, there is a possibility that a class could be formulated which

7



consists of all employees who have been denied delta benefits because they did not retire directly from WSRC and take their combined WEC, WSRC, and delta pensions at the time of such direct retirement (i.e., the alleged "phantom" condition). The members of such a class would in all likelihood also qualify as a class for Plaintiffs' proposed Subclass Two. However, Plaintiffs have failed to meet their burden of establishing the requirements for certification of such a class. Gariety, 368 F.3d at 362 [Plaintiffs bear the burden of demonstrating that the requirements of Rule 23 are satisfied.]; Retired Chicago Police Ass'n v. City of Chicago, 7 F.3d 584, 599 (7th Cir. 1993) [Subclasses must independently satisfy all of the requirements of Rule 23 before they can be certified]; Roby v. St. Louis Southwestern Ry.Co., 775 F.2d 959, 961 (8th Cir. 1985) [same]. Defendants have maintained from the start that Plaintiffs have never specifically identified more than six (6) individuals who might fall into this purported "class" of employees; see Hollingsworth Deposition, pp. 118-119; and the undersigned is constrained to agree.[3]

      While Plaintiffs correctly note that they do not need to show the exact number of a class in order to have it certified, they have (at least to this point) failed to provide even a quantifiable range of individuals who might fall into this class for the Court's consideration. In their reply brief filed March 23, 2007, Plaintiffs complained that the Defendants had "repeatedly blocked Plaintiffs' efforts to discover the exact number of persons affected," and that it would only be when they received spread sheets and database information from the Defendants that they would be able to determine "the exact number and identity of persons in Subclasses One and Two." Plaintiffs' Reply

---

[3] Indeed, it does not appear that Plaintiff Pennington would even be a member of this class, since he retired from WSRC. Similarly, proposed new Plaintiff Vinson Lamb also retired from WSRC. See East Texas Motor Freight System v. Rodriguez, 431 U.S. 395, 403-405 (1977) [Class representative must be a member of the class at the time the class is certified]; Clay v. Miller, 626 F.2d 345, 347 (4th Cir. 1980).

8



Brief, at pp. 2-3.[4] This material was required to be provided to the Plaintiffs by order of the Court filed February 26, 2007. However, Plaintiffs have still never provided this figure.

In their Sur-Sur-Reply Memorandum of January 4, 2008, Plaintiffs go through a laborious process in an attempt to determine a quantifiable class number for the Court's consideration. See Plaintiffs' Sur-Sur-Reply Memorandum, at pp. 4-8. Plaintiffs conclude in their January 4, 2008 brief that there are at least 142 members of this subclass, however, their analysis fails to substantiate this number. While Plaintiffs argue that there are at least 142 individuals who 1) no longer work at WSRC, 2) have had no delta calculation performed, and 3) are receiving no delta benefits, they have not shown, nor do they even argue (assuming this figure of 142 individuals is even correct), that the reason these 142 individuals are not receiving delta benefits is because they did not directly retire from WSRC and/or did not take combined WEC, WSRC, and delta pensions at the time of such direct retirement.

In other words, Plaintiffs have presented no evidence to the Court to show that the *reason* these 142 individuals are not receiving delta benefits is because they failed to meet the "phantom" condition for receiving these benefits, as opposed to other possible reasons such as having taken early retirement or other eligibility issues. Rather, they simply invite the Court to speculate that this is the case. This Court should decline to do so. Price v. Lucky Stores, Inc., 501 F.2d 1177, 1179 (9th Cir. 1974) [Decision whether to certify a class is discretionary with the court]; see 7A Wright & Miller, Federal Practice and Procedures § 1760, at 121 [class must be sufficiently definite that "it is administratively feasible for the court to determine whether a particular individual

---

[4]Later in that same brief, Plaintiffs also argue that it will be a simple matter to determine who is eligible for delta benefits *after* the Court decides whether the phantom condition is in fact a requirement for receiving delta benefits. Id, at pp. 6-7.

9



is a member]; Hartman v. Duffey, 19 F.3d 1459, 1471 (D.C.Cir. 1994) [class must be clearly defined]; see also Boley, 10 F.3d at 223 [class certification properly denied where any resultant harm was dependent upon consideration of unique circumstances pertinent to each class member].  There has been a lengthy discovery period in this case, in which substantial documentary evidence has been provided and numerous depositions have been taken, and Plaintiffs have still failed to provide enough specifics for the Court to make a determination as to whether a sufficient number of employees exist who have been denied delta benefits due to this "phantom" condition to certify a class on this claim. See Hollingsworth Deposition, pp. 118-119; International Woodworkers of America, AFL-CIO v. Chesapeake Bay Plywood Corp., 659 F.2d 1259, 1267 (4th Cir. 1981) [Party seeking certification bears the burden of establishing that all prerequisites are met]; Gariety, 368 F.3d at 362; Lienhart, 255 F.3d at 146 ["The party seeking class certification bears the burden of proof"]. Hence, Plaintiffs have failed to meet Rule 23(a)'s numerosity requirement either for their proposed Subclass One or (since there is no dispute that the same people would be in Subclass Two as are in Subclass One) for Subclass Two.  Demarco v. Edens, 390 F.2d 836, 845 (2d Cir. 1968) [Where plaintiff's assertion of numerosity is pure speculation or based on bare allegations, motion for class certification fails.]; Marcial v. Coronet Ins. Co., 880 F.2d 954, 957 (7th Cir. 1989).

### IV.

Finally, with respect to Plaintiffs' proposed Subclass Three, this class would include "[a]ll participants in the Delta Plan".   However, not only would individual fact finding be required to determine who, out of all of the employees possibly affected, are actually members of this "delta" plan or entitled to "delta" benefits, it is not even clear that the Plaintiffs are themselves members of this group, as that is one of the seminal issues in this lawsuit. Bailey v. Patterson, 369 U.S. 31, 32-33

10



(1962) [fundamental prerequisite to the maintenance of a class action is that there be an identifiable class of which the plaintiff is a member]; Roman v. ESB, Inc., 550 F.2d 1343, 1348 (4th Cir. 1976); 7A Wright & Miller, Federal Practice and Procedures § 1760, at 121 [class must be sufficiently definite that "it is administratively feasible for the court to determine whether a particular individual is a member"].

In any event, Defendants correctly note that should any of the individual Plaintiffs prevail relative to the claimed plan deficiencies alleged under their ERISA cause of action, an injunction can be issued at that time mandating correction of any statutory shortcomings of the delta plan on a prospective basis. Santana v. Deluxe Corp., 12 F.Supp.2d 162, 180 (D.Mass. 1998) [finding that the plaintiff had not shown that "a class action is superior to his individual action for injunctive relief..., as an injunction would have affected all...Plan participants."]; *cf.* Thomas v. Johnston, 557 F.Supp. 879, 916 n. 29 (W.D. Tex. 1983) (citing 2 Newberg on Class Actions § 9.45 at 307 (2d ed. 1985)) ["The lack of formal class certification does not create an obstacle to class-wide... injunctive relief when activities of a defendant are directed generally against a class of persons."]. Therefore, certification of a class for Plaintiffs' proposed Subclass Three is also not appropriate at this time.

## Conclusion

Based on the foregoing, it is recommended that the Plaintiffs' motion for class certification be **denied** at this time. Price, 501 F.2d at 1179 [Decision whether to certify a class is

11



within "the trial court's discretion"].

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

February 19, 2008



12